# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DONALD ALLEN, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3370 |
| | § | |
| COIL TUBING SERVICES, L.L.C., | § | |
| and W-H ENERGY SERVICES, INC., | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This Fair Labor Standards Act ("FLSA") case is before the Court on the Motion for Reconsideration [Doc. # 288] filed by Defendant Coil Tubing Services, LLC ("CTS") and the Motion for Reconsideration [Doc. # 289] filed by Plaintiffs. The parties seek reconsideration of various rulings in the Court's Memorandum and Order [Doc. # 283] entered October 17, 2011 ("October 2011 Opinion"). The Motions for Reconsideration have been fully briefed.[1]

Having reviewed the full record and the applicable legal authorities, the Court **grants** Defendant's Motion for Reconsideration as to whether a company-wide analysis of the Motor Carrier Act ("MCA") Exemption is appropriate and, consequently, whether Defendant is entitled to summary judgment on the application

---

[1]   Plaintiffs filed a Response [Doc. # 295] to Defendant's Motion for Reconsideration and Defendant filed a Reply [Doc. # 296]. Defendant filed a Response [Doc. # 294] to Plaintiffs' Motion for Reconsideration and Plaintiffs filed a Reply [Doc. # 297].

of the MCA Exemption for the period November 13, 2006 through June 6, 2008, to Field Service Employees company-wide with the exception of those Field Service Employees in the Broussard District who were assigned exclusively to offshore projects. The Court **denies** both Motions for Reconsideration in all other respects.

## I.        BACKGROUND

Defendant CTS is an oil well service company with six districts: Alice, Texas; Angleton, Texas; Bridgeport, Texas; Broussard, Louisiana; Bossier City, Louisiana; and Rock Springs, Wyoming. Plaintiffs were all paid fixed salaries and were not paid overtime wages. Plaintiffs were employed by CTS in various positions, including Equipment Operator, Service Technician, Service Supervisor Trainee, Service Supervisor, Service Coordinator, and Field Engineer. The positions, with the exception of Field Engineers and Service Coordinator, are referred to collectively as "Field Service Employees." Field Service Employees transported CTS equipment, chemicals, and tools to a project site, often on 18-wheel tractor-trailer trucks and other large trucks.[2]

Plaintiffs and Defendant moved for summary judgment on the applicability of certain exemptions to the FLSA, primarily the MCA Exemption, as to certain

---

[2]    For offshore projects in the Broussard District, third-party trucking companies were hired for the transport.

Bellwether Plaintiffs. In the October 2011 Opinion, the Court granted summary judgment in Defendant's favor that the MCA Exemption applied to Field Service Employees at the Broussard (land-based projects only) and Angleton Districts, and granted summary judgment in Plaintiffs' favor that the MCA Exemption did not apply to Field Service Employees at the Alice and Bridgeport Districts. The Court denied summary judgment regarding the applicability of the MCA Exemption to Field Service Employees assigned to offshore projects at the Broussard District.[3]

Plaintiffs and Defendant filed Motions for Reconsideration, which are ripe for decision.

## II. DEFENDANT'S MOTION FOR RECONSIDERATION

In the October 2011 Opinion, the Court determined that it was not appropriate to conduct the MCA Exemption on a company-wide basis. Instead, the Court analyzed each district separately. On that basis, the Court concluded that the percentage of interstate projects in the Alice and Bridgeport Districts was too low for the MCA Exemption to apply. Defendant seeks reconsideration of these rulings.

### A. Company-Wide Analysis

---

[3] The Court made other rulings in the October 2011 Opinion that are not material to the pending Motions for Reconsideration.

In the October 2011 Opinion, the Court held that CTS failed to make an adequate showing that its six districts operated as a single unit and, as a result, the Court held that each district should be analyzed independently for purposes of the MCA Exemption. Neither party had argued for a district-by-district analysis, and the Court is now persuaded that the company-wide analysis is proper.

The FLSA prohibits an "employer" from requiring its employees to work longer than forty (40) hours in a workweek unless the employer pays overtime wages for the excess hours. 29 U.S.C. § 207(a). The provisions of § 207 do not apply to any employee covered by the Motor Carrier Act. 29 U.S.C. § 213(b)(1). Consequently, if the MCA exemption applies, the "employer" is exempt from paying overtime wages to the employees who fall within the exemption. CTS was Plaintiffs' only "employer" during the relevant time periods; Plaintiffs were not employed by the various districts. Neither the FLSA nor the applicable legal authorities requires the employer to demonstrate that it operates as a single unit absent evidence to the contrary.

The Court is now aware that all CTS districts consistently have operated under a single United States Department of Transportation ("DOT") number, which is placed on every CTS vehicle subject to DOT regulation, including those in Alice and Bridgeport. Although not frequent, there has been interaction among the districts, including "borrowing" of personnel and/or equipment. Each CTS district solicits new

projects both inside and outside the district's geographic boundaries. Each district has obtained and performed projects outside its boundaries and within other dsitricts. There is insufficient evidence or legal authority for this Court to treat the districts separately instead of conducting the MCA Exemption analysis based on CTS as a single "employer." The Court notes, additionally, that its prior ruling would have the unintended and unwanted effect of placing employees who engage in interstate driving from the Alice and Bridgeport Districts outside the DOT's jurisdiction, while the DOT would have jurisdiction over employees in the Broussard and Angleton Districts who never actually drove across state lines.

Based on the Court's reconsideration of the evidence, the relevant statutes and case law, and the unintended practical impact of its prior ruling, the Court concludes that the MCA Exemption should be analyzed on a company-wide basis rather than district-by-district.

### B.     Applicability of MCA Exemption

The MCA Exemption applies if the Secretary of Transportation has the power to "establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."  29 U.S.C. § 213(b)(1).  "The Secretary of Transportation has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of

passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act (MCA); and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the MCA." *Barefoot*, 16 F.3d 1216, 1994 WL 57686, at *2 (citing 29 C.F.R. § 782.2(a); *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991)). In this case, it was uncontested that CTS is a carrier subject to DOT jurisdiction. The parties disputed, however, whether the Field Service Employees engaged in activities that affected "the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce."

The Court concluded in the October 2011 Opinion that the Field Service Employees engaged in driving activities that directly affected transportation safety.[4] The Court then, applying the district-by-district analysis, held that the Field Service Employees engaged in activities that affected transportation safety *in interstate commerce* in Angleton and Broussard, but not in Alice and Bridgeport. Having

---

[4] The Court's ruling excluded the employees in the Broussard District who were assigned exclusively to offshore projects. Throughout this Memorandum and Order, the Court's discussion of the application of the MCA Exemption to CTS's Field Service Employees similarly excludes those offshore employees in the Broussard District.

reconsidered and determined that a company-wide analysis is appropriate, the Court must again determine whether the Field Service Employees satisfied the "interstate" requirement for the MCA Exemption.

Defendant presented evidence that a total of approximately 7% of all land projects and 11% of all offshore projects during the relevant time period required Field Service Employees to drive across state lines. In *Morris v. McComb*, 332 U.S. 422 (1947), that United States Supreme Court held that full-time drivers who as a group spent approximately 4% of their time transporting goods in interstate commerce and the remainder driving intrastate were subject to the MCA Exemption. In *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 476 (5th Cir. 2010), the Fifth Circuit held that the MCA Exemption applied where the percentage of interstate transport was approximately 2.75%. In *Starrett v. Bruce*, 391 F.2d 320, 323-24 (10th Cir. 1968), the Tenth Circuit held that the MCA Exemption applied to a truck driver working for an employer who derived no income at all from interstate transport where the employer solicited interstate business and would have assigned the driver to interstate transport if the employer had obtained such business. Based on these and similar legal authorities, the Court concludes that the Field Service Employees are covered by the MCA Exemption.

In addition to applying the MCA Exemption based on the percentage calculation as discussed in *Morris* and *Songer*, the Court concludes that the evidence establishes that there was a reasonable expectation that any CTS Field Service Employee could be assigned to drive interstate. There were interstate trips during each quarter during the relevant time period, and the trips were assigned indiscriminately. As a result, CTS could have assigned any Field Service Employee to any of those interstate trips such that there was a reasonable expectation that a Field Service Employee would drive interstate. Consequently, the Court concludes that CTS is entitled to summary judgment that the MCA Exemption applies to all Field Service Employees for the period November 13, 2006 through June 6, 2008, with the exception of the employees at the Broussard District who were assigned exclusively to offshore projects.

### III. PLAINTIFFS' MOTION FOR RECONSIDERATION

#### A. Individual Analysis

Plaintiffs seek reconsideration of the Court's decision not to conduct the MCA Exemption analysis on an individual employee basis. As was discussed fully in the October 2011 Opinion, the Fifth Circuit has rejected the argument that a Court should evaluate the MCA Exemption on an individual analysis basis. *See Songer*, 618 F.3d

at 473-74; *Barefoot v. Mid-Am. Dairymen, Inc.*, 16 F.3d 1216, 1994 WL 57686, * 3 (5th Cir. Feb. 18, 1994).  The Court denies reconsideration on this issue.

### B.   Partial-Duty Drivers in Angleton District

Plaintiffs seek reconsideration also of the Court's partial-driver analysis for the Angleton District.  The Court in the October 2011 Opinion properly analyzed and applied 29 C.F.R. § 782.3 as it relates to "drivers," defined to include "partial-duty drivers."  Plaintiffs' argument that the Court must nonetheless determine whether each individual employee was assigned any other duties during a particular workweek is unpersuasive.  As was discussed in the Court's October 2011 Opinion, the Field Service Employees in the Angleton District qualify as "drivers" – which includes "partial-duty drivers" – for purposes of the MCA Exemption.  As a result, they are exempt from the overtime requirements of the FLSA under the general rule because they are likely to be called upon to perform safety-affecting activities.  *See* 29 C.F.R. § 782.2(b)(3).  Indeed, partial-duty drivers are exempt "even in a workweek when the employee happens to perform no work directly affecting "safety of operation."  *Id.*

Plaintiffs argue that they fall within the exception to this general rule in 29 C.F.R. § 782.2(b)(3).  The exception provides that the MCA Exemption does not apply where the continuing duties ***of the employee's job*** have no substantial effect on safety or where those activities are trivial, casual, and insignificant.  29 C.F.R.

§ 782.2(b)(3) (emphasis added). The focus of the exception is on the job duties of the employee, not on the amount of time the employee spends performing those duties. The Court previously concluded, and persists in the conclusion, that the Field Service Employees in the Angleton District had continuing duties that involved transporting heavy equipment to and from worksites. Such activities are not trivial, casual, or insignificant, and the general rule providing for the MCA Exemption applies.

Plaintiffs' reliance on 29 C.F.R. § 782.2(b)(4) is misplaced. That section relates to an employee who is shifted from one job to another, such as from driving to marketing. There is no evidence in the record that Plaintiffs were shifted from one job to another, only that they spent some of their time on land-based projects and some of their time on offshore projects.

### C.    "Four-Month" Rule

Plaintiffs challenge the application of the "four-month" rule from the DOL's Field Operations Handbook. The Court did not rule on the application of the "four-month" rule, noting that it had not been fully briefed and could not be decided on the existing record. Consequently, there is no decision on the "four-month" rule for the Court to reconsider.

The Court finds none of Plaintiffs' arguments persuasive and denies their Motion for Reconsideration.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that the applicability of the MCA Exemption should be analyzed on a company-wide basis. That analysis persuades the Court that CTS is entitled to summary judgment on the applicability of the MCA Exemption to all its Field Service Employees for the period November 13, 2006 through June 6, 2008, with the exception of the employees at the Broussard District who worked exclusively on offshore projects. The remaining arguments in the Motions for Reconsideration do not persuade the Court to alter its prior rulings.[5] Consequently, it is hereby

**ORDERED** that Defendant's Motion for Reconsideration [Doc. # 288] is **GRANTED IN PART** and **DENIED IN PART**. It is further

**ORDERED** that Plaintiffs' Motion for Reconsideration [Doc. # 289] is **DENIED**. It is further

**ORDERED** that the Court's Memorandum and Order [Doc. # 283] entered October 17, 2011, is **VACATED** and will be replaced by a revised Memorandum and Order.

---

[5] The Court recognizes that its rulings involve controlling questions of law as to which there is substantial ground for difference of opinion. Consequently, the Court would entertain requests for an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), of the revised Memorandum and Order.

SIGNED at Houston, Texas this **10th** day of **January, 2012**.